## VAN DER LOO v. PORTER,
### Price Administrator.
### No. 318.

United States Emergency Court of Appeals.

Heard at Washington June 1, 1946.
Decided Sept. 5, 1946.

Complaint dismissed.

John L. Laskey, of Washington, D. C., for complainant.

William R. Ming, Jr., Chief, Court Review Price Branch, of Washington, D. C. (Richard H. Field, Gen. Counsel, Jacob D. Hyman, Associate Gen. Counsel, Israel Convisser, and Frederick Fishman, Attorneys, all of the Office of Price Administration, all

of Washington, D. C., on the brief), for respondent.

Before MARIS, Chief Judge, and MAGRUDER and LAWS, Judges.

LAWS, Judge.

This suit is brought by a retailer of feminine apparel, who complains that the Administrator has not correctly interpreted Revised Maximum Price Regulation 330, establishing Retailers' and Wholesalers' Prices for Women's, Girls', Children's and Toddlers' Outerwear Garments [1]—as it applies to her and, alternatively, that if the Administrator's interpretation is correct, the Regulation is invalid.

The Regulation established as maximum prices which might be charged for feminine outerwear at wholesale and retail those prices at which each individual seller made the largest number of deliveries of garments of the same cost and in the same category [2] during a base period from August 1 to December 31, 1941. Each seller was required to file a pricing chart showing, by category, each cost price paid for garments sold during the base period, the price at which the largest number of garments in each cost price line was delivered, and the resulting percentage mark-up. For cost price lines not handled during the base period the Regulation allowed the category average mark-up for any higher than the highest shown on the chart, the mark-up shown for the lowest in the category if the new line was lower in cost than the lowest shown, and the mark-up of the next lower cost price line in the category if the new line was between the highest and the lowest.

Complainant entered business in 1938. She became overstocked in garments of various cost lines so that in the summer of 1941 she found it advisable to dispose of much of her inventory at reduced prices. Accordingly, during the base period established by Revised Maximum Price Regulation No. 330, complainant sold garments in a number of cost price lines below their normal selling prices and in some instances below their cost prices. The same practice was followed during the base period with reference to soiled or damaged garments. The result was that under the Regulation, as interpreted by the Administrator, maximum prices were established for twenty-nine of complainant's ninety-two base period cost price lines at or below cost or at abnormally low mark-ups.

Following issuance of the Regulation, complainant requested an interpretation from the Administrator as to the application of the Regulation to her particular situation. She was advised that the Regulation was interpreted to require her to continue the base period mark-ups in the lines she had sold at abnormally low figures. On June 13, 1945, a protest against the Regulation was filed with the Administrator. It was denied on February 12, 1946.

While the protest was pending, the Administrator filed suit in the District Court of the United States for the District of Columbia to enjoin complainant from violating the Regulation and recover treble damages for violations of ceiling prices. The District Court issued a permanent injunction restraining complainant from further violation of the Regulation, but found complainant had acted in good faith in making sales above established ceilings and denied the damages claimed against her. Appeals from the action of the District Court were taken by both parties to the United States Court of Appeals for the District of Columbia, where they are now pending.[3] Subsequently an order was entered by the District Court staying its judgment and granting complainant leave within thirty days to file a complaint in this court. A complaint was filed in this court within that period.

On April 11, 1946, while the present complaint was pending, the Administrator issued Amendment 5 to Revised Maximum Price Regulation 330,[4] providing a method for adjustment of abnormally low markups. In view of this, complainant concedes that

---

[1] The Regulation was issued September 13, 1944. 9 FR 11350.

[2] Category, as defined in the Regulation, refers to size groups designated in the Regulation. Sec. 2(b).

[3] Fleming v. Jo Van Der Loo, No. 9324, —— U.S.App.D.C. ——, 160 F.2d 905; Jo Van Der Loo v. Porter, No. 9325.*

[4] 10 FR 331.

* No opinion. Case dismissed by agreement.

the question presented to us does not involve the present validity of the Regulation, but only its validity before the Amendment.

■ Complainant consistently has maintained, as she does in this suit, that the Regulation properly interpreted does not limit her to the at-cost or below-cost selling prices which she charged in certain cost lines during the base period. Her position is that the Regulation was designed to perpetuate the customary mark-ups existing during the base period, and not to freeze below-cost selling prices established because of unusual circumstances, and therefore that a concern which during the base period delivered the largest number of its garments of a certain cost line at a selling price at or below cost is not required by the Regulation to accept this selling price as its ceiling. Complainant's suggested interpretation was rejected by the Administrator in the protest proceeding and apparently by the District Court in a memorandum opinion filed in the enforcement action. Complainant maintains that the District Court intended to avoid passing judgment as to the correct interpretation of the Regulation. However, inasmuch as an injunction was issued restraining further violations of ceiling prices, some of which were established at or below cost, we are forced to conclude that the District Court interpreted the Regulation as limiting complainant in some instances to ceiling prices at or below cost.

We have decided that where a District Court in an enforcement proceeding has interpreted a regulation as being applicable to one who later complains to this Court that the regulation is invalid, we must accept the District Court's interpretation.[5] The reason is that if we should reach the conclusion, contrary to the District Court, that the regulation was not applicable to the complainant, he would find himself in a dilemma. Our decision as to the interpretation of the regulation would not bind the District Court.[6] And we would not decide questions as to the validity of the regulation, which would be binding upon the District Court, since those questions from our point of view would have become moot. It is to assure a complainant in this court his right to a decision as to the validity of a regulation, that we accept the interpretation of the District Court. This situation is not altered in the present case by the fact that a protest was filed with the Administrator before the case was heard by the District Court. We proceed, then, to consider complainant's attacks upon the validity of the Regulation as interpreted by the Administrator.

Complainant's first claim of invalidity is that the Regulation unfairly compelled her to choose between dropping a number of cost lines usually handled by her or selling them below cost, while at the same time it permitted her competitors to sell the same merchandise at higher prices. She maintains this placed her at a competitive disadvantage contrary to the purposes of the Act.

■ The Regulation was of the "freeze" type which, being based upon actual experience of sellers and on the practices set by them of their own volition in a free market, was authorized by the Emergency Price Control Act, 50 U.S.C.A. Appendix, § 901 et seq.[7] There can be no doubt at this late point in the administration of the Act that the requirement that regulations be "generally fair and equitable" refers to industries, not to individuals. It is well settled that a regulation may be valid though it subjects an individual to hardship or has one effect on one individual

---

[5] Conklin Pen Co. v. Bowles, Em.App., 1946, 152 F.2d 764; Gordon v. Bowles, Em.App., 1946, 153 F.2d 614.

[6] The situation presented in this case is obviously to be distinguished from that in Collins et al. v. Porter, 66 S.Ct. 893, 90 L.Ed. 1075, where the District Court had not interpreted the Regulation at the time the question came before this court. The Supreme Court there held that the question of interpretation was open in this court and our interpretation would bind the District Court.

[7] Consolidated Water Power & Paper Co. v. Bowles, Em.App., 1944, 146 F.2d 492; United States Gypsum Co. v. Brown, Em.App., 1943, 137 F.2d 803, certiorari denied 320 U.S. 799, 64 S.Ct. 427, 88 L.Ed. 482.

and a different effect on another. Therefore, the fact that complainant may have been frozen at a competitive disadvantage because she was limited to prices which she had elected to charge in a reasonable base period does not of itself render the Regulation invalid.

Complainant relies upon cases previously decided by this Court. Consolidated Water Power & Paper Company v. Bowles, Em. App., 1944, 146 F.2d 492; Flett v. Bowles, Em.App., 1944, 142 F.2d 559; Montgomery Ward & Co. v. Bowles, Em.App., 1944, 147 F.2d 858; Hillcrest Terrace Corporation v. Brown, Em.App., 1943, 137 F.2d 663. Though relief was granted in these cases against competitive injustices established by a regulation, the problem in each involved either a concern which appeared to be representative of a class or a regulation which itself had dealt with individual concerns. We find neither of these situations in the present case.

Complainant's next contention is that the Regulation was invalid because as originally issued it failed to include provision for adjustment of abnormally low mark-ups. By the Emergency Price Control Act it is stated that regulations might "provide for such adjustments * * * as in the judgment of the Administrator are necessary or proper in order to effectuate the purposes of this Act." Sec. 2(c). As we understand it, complainant's contention in effect is that the Administrator was arbitrary in failing to include in the original regulation a provision for adjustment of abnormally low mark-ups; and that this appears to have been established by the action of the Administrator in issuing Amendment 5 providing adjustments for abnormally low mark-ups.

██ This contention ignores the changing conditions of our economy and fails to recognize the purpose of the protest procedure provided by the Emergency Price Control Act. This Act recognizes the difficulties confronting the Administrator in times of threatened inflation and does not require of him superhuman foresight. We think it may be agreed that if a regulation appears on its face to create a situation which reasonably will be expected to impose hardships upon an industry, the Administrator will be found to have acted arbitrarily and capriciously and the regulation held invalid. But on the other hand, if the regulation on its face appears fair, it is not to be held invalid simply because it eventuates, upon further consideration, that some in an industry were found to have suffered hardships. One of the reasons for granting the right to file protest proceedings before the Administrator was to give opportunity to the Administrator to re-examine a regulation with a view of determining whether it should be amended so as to deal more equitably in the future. It was not expected that amendments would operate retroactively or that they would be held to establish or admit invalidity of the original regulation.

██ We are clearly of the view that Revised Maximum Price Regulation No. 330 as originally drawn was fair and reasonable on its face. The Administrator, in our opinion, would not be expected to anticipate that in the base period established by him those in an industry would make the largest number of their deliveries of garments in any cost line at less than or close to cost price. The presumption would seem to be that reduced sales would occur only during short periods of time and that they would not continue in volume over so long a period as the five months' base period. We find nothing arbitrary or capricious in the Regulation as originally drawn.

Because of the views stated, we have not felt constrained to pass upon the question as to whether complainant has suffered individual hardship in her business. However, we have noted from the record that only a small percentage of her cost lines were frozen at ceilings which allowed her no profit and that the net profits of her business as a whole during the time the Regulation was in force was substantially in excess of those in previous years.

Judgment will be entered dismissing the complaint.