**CUDAHY BROS. CO. v. UNITED STATES.**
No. 8913.

Circuit Court of Appeals, Seventh Circuit.

June 4, 1946.

James D. Shaw and Van B. Wake, both of Milwaukee, Wis., for appellant.

Timothy T. Cronin and E. J. Koelzer, U. S. Atty., both of Milwaukee, Wis. (John

F. Sonnett, Asst. Atty. Gen., J. Francis Hayden, Sp. Asst. to Atty. Gen., and Marvin C. Taylor, Atty., Department of Justice, of Washington, D. C., on the brief), for appellee.

Before KERNER and MINTON, Circuit Judges, and BRIGGLE, District Judge.

KERNER, Circuit Judge.

This is an appeal from a judgment in plaintiff's favor in an action brought to recover from defendant what plaintiff claims is just compensation due it for requisitioned beef carcasses, pursuant to the Act of October 16, 1941, c. 445, 55 Stat. 742, as amended, 50 U.S.C.A.Appendix, § 721. The case was tried under the Tucker Act, 28 U.S.C.A. § 41 (20), to a judge without a jury. The court rendered a judgment that plaintiff was entitled to no recovery except the amount of $4,702.04 representing the unpaid fifty percent of the amount determined under the requisitioned proceedings.

The trial judge made special findings of fact. In those findings supported by the evidence are these facts. Plaintiff is engaged in the slaughtering of cattle, hogs and sheep, and in the preparation, and sale, at wholesale, of fresh beef and other meat products. On June 16, 1943, the President of the United States, acting through his authorized agent, requisitioned at plaintiff's plant seventy-five beef carcasses, and on September 2, 1943, a deputy director of the Office of Food Distribution Administration determined that the fair and just compensation for the carcasses taken was $9,404.09, but plaintiff refused to accept that amount. Thereupon, defendant, pursuant to the statute,[1] paid plaintiff fifty percent, or $4,702.05, of the $9,404.09, and plaintiff, claiming that the value of the carcasses was $12,191.49, brought this action to recover what it claimed was fair and just compensation for the requisitioned carcasses. The court also found that prior to June 16, 1943, the Office of Price Administration had fixed a ceiling price for beef carcasses; that when the carcasses were taken, there was an established market at Cudahy, Wisconsin, at which plaintiff was selling like carcasses at the ceiling price; and that the market value of the carcasses requisitioned was $9,404.09.

The record discloses that in addition to the facts found by the court, there was testimony in plaintiff's behalf to the effect that fifty cents per hundredweight more could have been gotten if the carcasses had been cut into pieces, and twenty-five cents per hundredweight more could have been obtained if the beef had been sold in less than carload lots.

Plaintiff claims that the court determined that the maximum ceiling price in effect on June 16, 1943, constituted the only basis for the determination of fair and just compensation, and contends that the standards adopted by the court did not afford an appropriate measure for, nor secure the rendition of, fair and just compensation.

The argument is that "fair value and just compensation" presupposes the existence of a free market; that in our case, no free market prevailed; and that in such a situation, resort should be had to indices of value other than an artificially created market.

 True, just compensation includes all elements of value that inhere in the

---

[1] Section 721, 50 U.S.C.A.Appendix, provides in part as follows:

"The President shall determine the amount of the fair and just compensation to be paid for any property requisitioned and taken over pursuant to this Act * * *, but each such determination shall be made as of the time it is requisitioned * * *, in accordance with the provision for just compensation in the fifth amendment to the Constitution of the United States. If, upon any such requisition of property, the person entitled to receive the amount so determined by the President as the fair and just compensation for the property is unwilling to accept the same as full and complete compensation for such property he shall be paid 50 per centum of such amount and shall be entitled to sue the United States in any * * * district court of the United States in the manner provided by sections 24(20) and 145 of the Judicial Code (U.S.C., 1934 ed., title 28, secs. 41(20) and 250) for an additional amount which, when added to the amount so paid to him, he considers to be fair and just compensation for such property."

property, but it does not exceed market value fairly determined, Olson v. United States, 292 U.S. 246, 255, 54 S.Ct. 704, 78 L.Ed. 1236, and anticipated profits which are lost because of the taking are not to be included or used as a measure, De Laval Steam Turbine Co. v. United States, 284 U.S. 61, 52 S.Ct. 78, 76 L.Ed. 168, and Russell Motor Car Co. v. United States, 261 U.S. 514, 43 S.Ct. 428, 67 L.Ed. 778, and where there is a market price prevailing at the time and place of the taking, that price is just compensation. United States v. New River Collieries Co., 262 U.S. 341, 344, 43 S.Ct. 565, 67 L.Ed. 1014. See also Brooks-Scanlon Corp. v. United States, 265 U.S. 106, 44 S.Ct. 471, 68 L.Ed. 934. Plaintiff, however, argues that the ascertainment of compensation is a judicial function and that no power exists in any other department of the Government to declare what the compensation shall be or to prescribe any binding rule in that regard, and that the just compensation clause may not be evaded or impaired by any form of legislation.

On the other hand, defendant contends that the court's finding that there was an established market at the ceiling price must be regarded as a finding that there was a "fair market value" for the beef at that level. It challenges plaintiff's assertion that the court determined that the maximum ceiling constituted the only basis for the determination of fair and just compensation. But even if that were true, it contends, the ceiling price represents a maximum limit of just compensation.

It may be well at this point to discuss the case of United States v. New River Collieries Co., supra, claimed by plaintiff to be decisive of the question. To be sure, the court in that case rejected the Government price, but that was so because it found that there was in fact an actual market at a higher price, hence we think it not controlling here.

■ Moreover, a distinction must be drawn between the consequences of a seizure and the consequences of the imposition of lawful war-time restriction on price, since the law is now well settled that the imposition of use and price is a proper exercise of sovereign war powers and that the resulting market conditions are lawful. Yakus v. United States, 321 U.S. 414, 64 S.Ct. 660, 88 L.Ed. 834. And since they are both lawful, actual and real, they must control. Many authorities are found in support thereof.[2] In the case of Graves v. United States, supra, the court in discussing a somewhat similar contention said: "Under Office of Price Administration regulations the price for remelt was limited to 10¼ cents per pound. These governmental restrictions, unquestionably lawful and general in their scope, * * *, were actualities which circumscribed the market." [62 F.Supp. 233.]

■ The principles enunciated in the cases cited impel us to the conclusion that the market price at which property is actually bought and sold at the time of the taking is the measure of just compensation and that the causes which control or affect the market at the time are immaterial.

Consequently, the judgment of the District Court must be affirmed. It is so ordered.

---

[2] Dakota Central Telephone Co. v. State of South Dakota, 250 U.S. 163, 39 S.Ct. 507, 63 L.Ed. 910, 4 A.L.R. 1623; Morrisdale Coal Co. v. United States, 259 U.S. 188, 42 S.Ct. 481, 66 L.Ed. 892; Nortz v. United States, 294 U.S. 317, 55 S.Ct. 428, 79 L.Ed. 907, 95 A.L.R. 1346; Perry v. United States, 294 U.S. 330, 55 S.Ct. 432, 79 L.Ed. 912, 95 A.L.R. 1335; Omnia Commercial Co. v. United States, 261 U.S. 502, 43 S.Ct. 437, 67 L.Ed. 773; Mulford v. Smith, 307 U.S. 38, 59 S.Ct. 648, 83 L.Ed. 1092; Sunshine Anthracite Coal Co. v. Adkins, 310 U.S. 381, 60 S.Ct. 907, 84 L.Ed. 1263; National Broadcasting Co. v. United States, 319 U.S. 190, 63 S.Ct. 997, 87 L.Ed. 1344; Bowles v. Willingham, 321 U.S. 503, 517, 64 S.Ct. 641, 88 L.Ed. 892; United States v. Delano Park Homes, Inc., 2 Cir., 146 F.2d 473; Graves v. United States, D.C., 62 F.Supp. 231; Lessner Plumbing & Heating Co. v. United States, D.C., 64 F.Supp. 931; and Louisville Flying Service, Inc. v. United States, D.C., 64 F.Supp. 938.