202 F.2d 156
 COLONIAL VILLAGE APARTMENTS, Inc. et al.
v.
HENDERSON, Director of Rent Stabilization.
 No. 621.
 United States Emergency Court of Appeals.
 Heard at Washington, D. C., January 17, 1953.
 Decided February 10, 1953.
 
 James M. Earnest, Washington, D. C., with whom Fred M. Vinson, Jr., Washington, D. C., was on the brief, for complainants.
 Nathan Siegal, Sol., Washington, D. C., with whom Ed Dupree, Gen. Counsel, J. Walter White, Asst. Gen. Counsel, and Charles P. Liff, Chief, Appeals Section, all of the Office of Rent Stabilization, Washington, D. C., were on the brief, for the respondent.
 Before MARIS, Chief Judge, and MAGRUDER and McALLISTER, Judges.
 MAGRUDER, Judge.
 
 
 1
 By the Defense Production Act Amendments of 1952, 66 Stat. 301-304, 50 U.S.C. A.Appendix, §§ 2107, 2108, §§ 407 and 408 of the Act were amended to extend the procedures of administrative protest and judicial review to regulations or orders relating to rent controls under the Housing and Rent Act of 1947, as amended, 50 U.S.C.A.Appendix, § 1881 et seq. The complaint now before us was filed pursuant to this authority, complainants' protest having been denied by the Director of Rent Stabilization by order issued October 10, 1952.
 
 
 2
 Complainants are a group of owners of housing accommodations in Arlington County, Virginia. Their rents had been controlled under the Housing and Rent Act of 1947, 61 Stat. 193. A new subsection 204(j)(2) was added to the Act by the Housing and Rent Act of 1949, reading as follows, 63 Stat. 26:
 
 
 3
 "(2) If any State by law declares that Federal rent control is no longer necessary in such State or any part thereof and notifies the Housing Expediter of that fact, the Housing Expediter shall immediately make public announcement to the effect that he has been so advised. At the same time all rent controls under this Act, as amended, with respect to housing accommodations within such State or part thereof shall be terminated on the fifteenth day after receipt of such advice. * * *"
 
 
 4
 Pursuant thereto, the General Assembly of Virginia passed an Act approved March 10, 1950, and effective June 10, 1950, which after reciting the above-quoted § 204(j)(2) of the Federal Act and the opinion of the General Assembly "that rent controls by the Federal government are no longer necessary or advisable and that the economic laws of supply and demand and free bargaining should be allowed to operate" proceeded to enact in part as follows: "The General Assembly of Virginia hereby declares that Federal rent control is no longer necessary in this State or any part thereof and directs that the Keeper of the Rolls and the Clerk of the House of Delegates notify the Housing Expediter at once of the action of the General Assembly of Virginia this day taken." Acts of Assembly Va.1950, p. 187, c. 143. Thereby, Federal rent control terminated in the whole of Virginia on June 25, 1950. By the same Act, the Virginia Legislature repealed the provisions of its local law relating to State rent control.
 
 
 5
 By § 203 of Pub.L. 96, 82d Cong., enacted July 31, 1951, § 204 of the Housing and Rent Act of 1947, as amended, was further amended by the addition of a new subsection (k) reading in part as follows, 65 Stat. 145:
 
 
 6
 "(k) The President shall by regulation or order establish such maximum rent or maximum rents as in his judgment will be fair and equitable for controlled housing accommodations (as defined in section 202(c)) (1) in any State which by law declares that there exists such a shortage in rental housing accommodations as to require Federal rent control in such State, or (2) in any incorporated city, town, village, or in the unincorporated area of any county (other than a city, town, village, or unincorporated area of any county within a State which is controlling rents) upon receipt of a resolution of its governing body adopted for that purpose in accordance with applicable local law and based upon a finding by such governing body, reached as a result of a public hearing held after ten days' notice, that there exists such a shortage in rental housing accommodations as to require Federal rent control in such city, town, village, or unincorporated area in such county."
 
 
 7
 Arlington County, Virginia, is an unincorporated area, and its local governing body is its County Board created under the laws of the State of Virginia. Such County Board was thus empowered to instigate the reestablishment of Federal rent control in Arlington County by action in accordance with § 204(k). Pub.L. 96 also amended § 204(f) of the Housing and Rent Act of 1947, as amended, so as to extend the life of that Act to the close of June 30, 1952, 65 Stat. 144. A public hearing was held by the County Board of Arlington pursuant to § 204(k) on October 5, 1951, but June 30, 1952, went by without the County Board having adopted any resolution in the sense of § 204(k).
 
 
 8
 However, the termination date of the Housing and Rent Act of 1947, as amended, was again postponed. Section 204(f) of that Act, as amended by the Defense Production Act Amendments of 1952, 66 Stat. 306-307, enacted June 30, 1952, and as further amended by the Supplemental Appropriation Act, 1953, enacted July 15, 1952, came to read in part as follows:
 
 
 9
 "(f)(1) The provisions of this title shall cease to be in effect at the close of September 30, 1952, except that they shall cease to be in effect at the close of April 30, 1953 —
 
 
 10
 * * * * * *
 
 
 11
 "(B) In any incorporated city, town, village, or unincorporated area of any county which, at a time when maximum rents under this title are in effect therein, and prior to September 30, 1952, declares (by resolution of its governing body adopted for that purpose, or by popular referendum in accordance with local law) that a substantial shortage of housing accommodations exists which requires the continuance of Federal rent control in such city, town, village, or unincorporated area; * * *
 
 
 12
 * * * * * *
 
 
 13
 "(2) Any incorporated city, town, village, or unincorporated area of any county which makes the declaration specified in paragraph (1) (b) [B] of this subsection shall notify the President in writing of such action promptly after it has been taken."
 
 
 14
 Meanwhile the personnel of the County Board had changed by the expiration of the terms of office of two of the five members of the Board and by the election and qualification of two new members in their stead. The County Board as thus newly constituted held no public hearing under § 204(k) of the Housing and Rent Act of 1947, as amended, but as above stated the old Board had held such a public hearing on October 5, 1951.
 
 
 15
 The County Board met on September 6, 1952, with the deadline of September 30, 1952, not far off. The Board was then faced with a dual problem: (1) To take appropriate action to obtain the reestablishment of rent control in Arlington County prior to September 30, 1952, at the close of which date the provisions relating to maximum rents in the Housing and Rent Act of 1947, as amended, were generally to cease to be in effect, as provided in the above-quoted § 204(f); and (2) to procure, if possible, the continuance of such reimposed Federal controls for the extended period to the close of April 30, 1953.
 
 
 16
 With these dual objectives in mind, the County Board on September 6, 1952, adopted two resolutions.
 
 
 17
 The first of these resolutions purported to have been made pursuant to § 204(k). For present purposes it is necessary to recite only part of this resolution:
 
 
 18
 "Be It Resolved, By the County Board of Arlington County, Virginia, that as a result of a public hearing held after ten days' notice, it is determined that there exists such a shortage in rental housing accommodations as to require Federal rent controls in the County".
 
 
 19
 The passage of this resolution did not forthwith reestablish Federal rent control in Arlington County. Under § 204(k), further action had to be taken to this effect by the Director of Rent Stabilization.
 
 
 20
 The second resolution adopted by the Board at its meeting on September 6, 1952, purported to have been made under § 204 (f)(1)(B), quoted above, and was an attempt by the Board to have the anticipated reestablished Federal rent control, which was sought in the first resolution, continue in effect through the extended period to the close of April 30, 1953. This second resolution was as follows:
 
 
 21
 "Pursuant to Section 204(f) of the Housing and Rent Act of 1947, as amended, the County Board of Arlington County, State of Virginia, the governing body of Arlington County, hereby declares by this resolution adopted this 6th day of September, 1952, that a substantial shortage of housing accommodations exists which requires the continuance of Federal rent control in Arlington County.
 
 
 22
 "It is further resolved that a duly certified copy of this resolution shall promptly be sent to the Director of Rent Stabilization, Washington, D. C."
 
 
 23
 The second resolution must be held to have failed in its purpose, if effect is to be given to the plain language of § 204 (f)(1)(B) as written. That provision of law offered to local communities the opportunity of procuring the continuance of Federal control for the additional period from September 30, 1952, to the final termination date, April 30, 1953, provided that the local governing body should adopt an appropriate resolution "at a time when maximum rents under this title are in effect therein, and prior to September 30, 1952". It is obvious that on September 6, 1952, when the second resolution was adopted, maximum rents under the Housing and Rent Act of 1947, as amended, were not in effect in Arlington County, Virginia. As one of the members of the County Board at the meeting on September 6, 1952, aptly remarked: "How can we ask for a continuance when we don't actually have it yet."
 
 
 24
 After receipt of notification from the County Board of the adoption on September 6, 1952, of the two resolutions aforesaid, the Director of Rent Stabilization on September 26, 1952, issued Amendment 79, 17 F.R. 8662, to Schedule A of Rent Regulation 1, 16 F.R. 12879, effective September 29, 1952, the effect of which amendment was to add Arlington County, Virginia, to the list of defense-rental areas subject to the Housing Rent Regulation. At the same time the Director issued Amendment 77, 17 F.R. 8662, to Schedule A of Rent Regulation 2 — Rooms in Rooming Houses and Other Establishments, 16 F.R. 13133, the effect of which was to add Arlington County, Virginia, to the list of defense-rental areas subject to said regulation. These two amendments were the regulations or orders protested by the complainants in the present case.
 
 
 25
 It is the contention of respondent that such amendments were effective to reestablish rent controls in Arlington County, Virginia, as of September 29, 1952; and that by force of the self-operating provision of § 204(f)(1)(B) of the Act, in conjunction with the second resolution adopted by the County Board September 6, 1952, such Federal rent control is still in effect in Arlington County, and will remain in effect until April 30, 1953, unless prior to that date Federal control is terminated by some future action in accordance with the provisions of the Act.
 
 
 26
 Complainants have urged several reasons why, in their view, the first resolution of the County Board did not meet the requirements of § 204(k) of the Act, with the consequence that in fact and in law the subsequent action by the Director of Rent Stabilization did not result in the reimposition of rent controls in Arlington County on September 29, 1952. We do not find it necessary at this time to rule upon these contentions, because even if we assume that respondent effectively reestablished rent control in the county on September 29, 1952, such control necessarily lapsed on the next day, September 30, 1952, since in our view the second resolution of the County Board passed September 6, 1952, was ineffective to continue it. As to this brief period of two days, it does not appear that complainants committed any violations of the regulations, or that enforcement suits are either pending or threatened with reference to any alleged violations during September 29 and September 30, 1952. Section 408(d) of the Defense Production Act of 1950, as amended, 66 Stat. 304, in its concluding clause provides: "nor, except as provided in this subsection, shall any retroactive effect be given to any judgment setting aside a provision of a regulation or order issued under this title." As we pointed out in reference to the comparable provision in § 204(e)(2) of the Emergency Price Control Act, as amended, 50 U.S.C.A.Appendix, § 924(e)(2), a judgment of this court setting aside a regulation or order is given retroactive effect only in enforcement proceedings brought pursuant to the Act, and then only to the extent that such proceedings are based upon a violation of the regulation or order so set aside. Talbot v. Woods, Em.App.1947, 164 F.2d 493, 496. Therefore the issue is moot as to the validity of the protested regulations on September 29 and September 30, 1952, if, as we have concluded, the provisions of the Housing and Rent Act of 1947, as amended, in any event ceased by operation of law to be in effect at the close of September 30, 1952, as applied to Arlington County, Virginia.
 
 
 27
 Against this conclusion respondent makes what we understand to be alternative arguments: (1) Assuming the validity of the first resolution of the County Board on September 6, 1952, it is said that it then became the mandatory duty of the Director of Rent Stabilization to issue a regulation or order reimposing, in appropriate terms, Federal rent control in Arlington County; that since a court of equity will regard as done what ought to have been done, maximum rents should be deemed to have been "in effect" for the purposes of the Act on September 6, 1952, when the second resolution was adopted by the County Board; (2) that the second resolution of September 6, 1952, not having been rescinded, may be regarded as a continuing declaration of the County Board respecting the substantial shortage of housing accommodations in the county; and that if such resolution were inoperative on September 6, 1952, when adopted, it became operative to bring into force the self-executing provision of § 204(f)(1)(B) as soon as the Director acted on September 29, 1952, to reimpose controls in Arlington County under § 204(k).
 
 
 28
 As to the first of these arguments, it certainly was not the mandatory duty of the Director to reimpose rent controls on September 6, 1952, because under § 204 (k) he was not required to act until formal receipt by him of the resolution of the County Board, and after that he certainly had a reasonable time in which to set maximum rents which in his judgment would be "fair and equitable". And even after promulgating such regulation, it surely was within the discretion of the Director to postpone its effective date for a reasonable period, so that the landlords affected might have reasonable advance notice of when the reimposed controls would take effect.
 
 
 29
 As to the second of the above arguments, the question really is whether § 204(f) (1) (B) is to be interpreted in a free and latitudinarian sense, or whether it is to be given a strict construction. In the present case we think that a strict and literal construction does not produce an absurd result, but on the contrary is more in accord with the basic objectives of the Congress. It is to be borne in mind that in § 201 of the Housing and Rent Act of 1947, 61 Stat. 196, the Congress reaffirmed "the declaration in the Price Control Extension Act of 1946 that unnecessary or unduly prolonged controls over rents would be inconsistent with the return to a peace-time economy and would tend to prevent the attainment of the goals therein declared"; and further recited "that it is its purpose to terminate at the earliest practicable date all Federal restrictions on rents on housing accommodations." Though the Congress has from time to time somewhat reluctantly and grudgingly extended the life of the Housing and Rent Act of 1947, it has never modified that underlying statement of purpose in § 201. It is also to be remembered that the General Assembly of Virginia, in the Act of March 10, 1950, above referred to, declared "that Federal rent control is no longer necessary in such State or any part thereof"; as the result of which, pursuant to § 204(j) (2) of the Act, Federal rent control had terminated in the State of Virginia on June 25, 1950. In the most recent extension of the Housing and Rent Act of 1947, as amended, the termination date was generally set for September 30, 1952, with provision for continuance until April 30, 1953, in certain local areas under conditions obviously regarded as exceptional. In enacting the provisions of § 204(f) (1) (B), as amended in mid-year 1952, it may be suspected that the Congress had in mind local communities which had been under Federal rent control for substantial periods of time, and thought that it would be wise to continue such controls for the more extended period, to April 30, 1953, if the local governing body so requested. We wonder whether the Congress contemplated the possible conjoint operation of § 204(k) and § 204(f) (1) (B), whereby controls might be reimposed in a given area on September 29, 1952, just before the deadline, and then by force of a resolution of the local governing body under § 204(f) (1) (B) passed a few hours after the reimposed controls took effect, such newly reimposed controls might be continued in effect for the further six months' period after the Act, in its general application, had ceased to be in effect. However that may be, it did not happen that way in this case. Under the strict, and we think proper, construction of the Act, the local governing body could not obtain the additional six months' period of Federal control unless it adopted a resolution to that effect "at a time when maximum rents under this title are in effect therein". For the reasons already stated, the second resolution of the County Board of September 6, 1952, did not meet this requirement.
 
 
 30
 As to the form of our judgment, it seems that we should not "set aside" the provisions of the protested regulations, for in our view such regulations, as applied to Arlington County, Virginia, expired by operation of law on September 30, 1952, with the termination of the Act under which they were issued. However, we are now empowered, by the amended § 408(a) of the Defense Production Act of 1950, 66 Stat. 302 "to permanently enjoin or set aside, in whole or in part, the regulation or order or the amendment of or supplement to the regulation or order protested". We shall therefore enter a judgment declaring that the provisions of title II of the Housing and Rent Act of 1947, as amended, and any valid regulations or orders issued thereunder, ceased to be in effect, as applied to Arlington County, Virginia, at the close of September 30, 1952; and enjoining respondent from enforcing the provisions of any such regulation or order in Arlington County, Virginia, from and after October 1, 1952.
 
 
 31
 Judgment will be entered accordingly.